FILED
2014 Jul-09  AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **SYNOVUS BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:12-CV-3649-VEH** |
| | ) | |
| **HILDA HYCHE, an individual,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

## MEMORANDUM OPINION AND ORDER

This civil action was filed on October 19, 2012, by the plaintiff, Synovus Bank, against defendants Tarrie H. Hyche and Hilda Hyche. (Doc. 1). Against both defendants, the complaint alleged counts for breach of promissory notes (Counts I and II) and alternatively for unjust enrichment (Counts IV). These counts arise out of two loans made by the plaintiff to both defendants. Counts III and V of the complaint were alleged only against Tarrie Hyche, and concerned a third loan made only to him.

On November 16, 2012, Tarrie Hyche filed a notice of bankruptcy. (Doc. 7.) Pursuant to 11 U.S.C. § 362, this action was then automatically stayed against him, pending the outcome of the bankruptcy proceedings. On November 21, 2012, Tarrie

Hyche filed a "Notice of Filing Removal"[1] which Tarrie Hyche stated "[constituted] the removal of this cause of action from the United States District Court . . . to the United States Bankruptcy Court . . .." (Doc. 9 at 1).

On December 4, 2012, Hilda Hyche filed a document entitled "Notice of Filing Answer and Counterclaim in Bankruptcy Court." (Doc. 12). A document entitled "Hilda Hyche's Answer to Synovus Bank's Complaint and Counterclaim," was attached to that document. (Doc. 12 at 3-20). The caption of that document states that it is to be filed in "The United States Bankruptcy Court for the Northern District of Alabama, Western Division." (Doc. 12 at 3). However, there is no indication that it was filed in that court. In that document, Hilda Hyche alleges counterclaims against Synovus for "Improper/Intentional/Wanton/Reckless/Negligent Loan Original/Handling/Administration" (Count I), suppression (Count II), promissory estoppel (Count III), equitable estoppel (Count IV), breach of contract (Count V), and breach of duty of good faith and fair dealing (Count VI). Other than being filed in as an attachment to document 12, the counterclaim has not been officially filed in to the record in <u>this</u> action. However, the parties treat the document as if it <u>is</u> filed in this case and as if it adequately alleges counterclaims against the plaintiff. (Doc. 27 at 15,

---

[1] The notice does not say by whom it was filed. However, it is signed by counsel "for Tarrie Hyche," and the attachment to which it refers states on its face that it was filed in the bankruptcy court by Tarrie Hyche. (Doc. 9-1).

n. 4).

On December 26, 2012, the court severed the plaintiff's claims against Tarrie Hyche and dismissed those claims without prejudice. (Doc. 15 at 5). Those claims included Counts I, II, and IV, to the extent brought against Tarrie Hyche, and Counts III and V in their entirety. Counts I, II, and IV remain as to defendant Hilda Hyche alone.

The case comes before the court on the plaintiff's motion for summary judgment. (Doc. 27). For the reasons stated herein, the motion will be **GRANTED in part** and **DENIED in part**, and this matter will be set for trial.

## I.   STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden

4

of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.   FACTS

Synovus made two commercial loans to Tarrie and Hilda Hyche, jointly and severally.[2] The most recent promissory note[3] regarding loan one is dated December 19, 2011. (Doc. 1-1 at 2). In this document, the Hyches, jointly and severally, agree to pay to Synovus the principal amount of $301,100.00. (Doc. 1-1 at 2). The maturity date of the loan was December 19, 2012. (Doc. 1-1 at 2). The note also provided that:

– the borrowers agreed "to pay interest on the outstanding principal balance from December 19, 2011[,] at the rate of 5.0% per year until the [interest] rate changes" (doc. 1-1 at 2);

– the new rate, called the "index rate" in the promissory note, would be 1.0 % above "Lender's prime, which is the rate used by Lender to set interest rates at which loans are made to various customers. Loan may be made at, above[,] or below said prime rate" (doc. 1-1 at 2);

---

[2] The loan was actually made by First Bank of Jasper, which was formerly known as First National Bank of Jasper, a division of Synovus. For ease of reference, the court will refer to the bank as Synovus.

[3] The note states that it "amends and restates that certain note dated 09/01/2009." (Doc. 1-1 at 2).

– the rate <u>could</u> change as often as "monthly," but <u>would</u> change "when the index rate changes" (doc. 1-1 at 2);

– the rate would never be below 5.0% (doc. 1-1 at 2);

– after the maturity date of the loan, the borrowers would continue to pay the same variable rate of interest "on the unpaid balance of the note owing after maturity, and until paid in full" (doc. 1-1 at 2);

– the borrowers would pay late fees "on the portion of any payment not made within 10 days after it is due equal to 5% of the unpaid amount with a minimum of $100" (doc. 1-1 at 2);

– accrued interest would be paid monthly "beginning January 19, 2012" (doc. 1-1 at 2);

– the principal would be paid back by the maturity date of December 19, 2012 (doc. 1-1 at 2);

– the borrowers agreed "to pay all costs of collection, replevin or any other similar type of cost if [they] are in default. In addition, if [Synovus] hire[s] an attorney to collect this note, [the Borrowers] also agree to pay any fee [Synovus] incur[s] with such attorney plus court costs . . ." (Doc. 1-1 at 3); and

– the note was secured by a real estate mortgage "on land only located at 278 Double Springs, AL 35553 Winston Co." (Doc. 1-1 at 2; doc. 28-1 at 6-7, 26-

7

32).

The defendant does not dispute the fact that she entered into this agreement, nor does she dispute the terms of same. (Doc. 27 at 4-5; doc. 30 at 2).

The most recent promissory note[4] regarding loan two is also dated December 19, 2011. (Doc. 1-2 at 2). In this document, the Hyches, jointly and severally, agree to pay to Synovus the principal amount of $200,991.06. (Doc. 1-2 at 2). The maturity date of the loan was December 19, 2012. (Doc. 1-2 at 2). It also provided that:

– the borrowers agreed "to pay interest on the outstanding principal balance from December 19, 2011[,] at the rate of 5.0% per year until the [interest] rate changes" (doc. 1-2 at 2);

– the new rate, called the "index rate" in the promissory note, would be 1.0 % above "Lender's prime, which is the rate used by Lender to set interest rates at which loans are made to various customers. Loan may be made at, above[,] or below said prime rate" (doc. 1-2 at 2);

– the rate could change as often as "daily," but would change "when the index rate changes" (doc. 1-2 at 2);

– the rate would never be below 5.0% (doc. 1-2 at 2);

---

[4] The note states that it "amends and restates that certain note dated 06/01/2007." (Doc. 1-2 at 2).

– after the maturity date of the loan, the borrowers would continue to pay the same variable rate of interest "on the unpaid balance of the note owing after maturity, and until paid in full" (doc. 1-2 at 2);

– the borrowers would pay late fees "on the portion of any payment not made within 10 days after it is due equal to 5% of the unpaid amount with a minimum of $100" (doc. 1-2 at 2);

– accrued interest would be paid monthly "beginning January 19, 2012" (doc. 1-2 at 2);

– the principal would be paid back by the maturity date of December 19, 2012 (doc. 1-2 at 2);

– the borrowers agreed "to pay all costs of collection, replevin or any other similar type of cost if [they] are in default. In addition, if [Synovus] hire[s] an attorney to collect this note, [the Borrowers] also agree to pay any fee [Synovus] incur[s] with such attorney plus court costs . . ." (Doc. 1-2 at 3); and

– the note was secured by a "deed to secure debt dated 06/01/2007, Cullman County, Book 1524, Page 485" (Doc. 1-2 at 2; doc. 28-1 at 7, 35-42).

The defendant does not dispute the fact that she entered into this agreement, nor does she dispute the terms of same. (Doc. 27 at 5-6; doc. 30 at 2).

Jeffrey Spielberger is a Managed Assets Officer for Synovus Bank. (Doc. 28-1

at 2). In his affidavit, he states that he is "personally involved in, and responsible for, Synovus'[s] collection activities with respect to [the loans at issue in this case]." (Doc. 28-1 at 3). In support of the statements in his affidavit, he references records which he states "were made at or near the time of the event recorded by a person with knowledge of the event and charged with the responsibility of recording such events," and "are kept in the ordinary course of Synovus'[s] regularly conducted business activity, which is Synovus'[s] customary practice." (Doc. 28-1 at 2-3). Spielberger states that the last monthly interest payment received by the plaintiff on the loans occurred on September 21, 2012, and the loans are now in default. (Doc. 28-1 at 3, 4). Spielberger states that, as of September 17, 2013, the following amounts were due and payable on the loans:

| | | |
|---|---|---|
| Loan One | $160,060.09 | principal |
| | $12,399.64 | accrued interest |
| | $4,870.50 | late fees |
| Loan Two | $200,991.06 | principal |
| | $10,998.67 | accrued interest |
| | $6,157.18 | late fees |
| Collection Costs: | $52,194.65 | attorneys' fees and expenses |

(Doc. 28-1 at 6). The defendant offers no evidence to dispute these sums, and does not challenge the admissibility of the affidavit or the documents it references. Further, these sums were listed as part of the Synovus's statement of fact number 27 in

10

support of the motion for summary judgment. (Doc. 27 at 8-9). In response to this fact, the defendant did not dispute these calculations, instead denying only "that any amounts are owed" because Synovus did not pursue foreclosure before instituting this action, and claiming that the value of the security for the loans "exceeds any amount due." (Doc. 30 at 3).[5]

Spielberger attaches to his affidavit what he has identified as "a true and correct copy of a Synovus principal, interest and late fee payoff statement for [each loan] as of September 17, 2013." (Doc. 28-1 at 3-4; doc. 28-1 at 4). The documents to which he refers shows that, as of September 17, 2013, outstanding principal due on loan one was $160,060.09, with accrued interest being $12,399.64, and late charges equaling $4,870.50. (Doc. 28-1 at 14). The documents also show that, as of September 17, 2013, outstanding principal due on loan two was $200,991.06, with

---

[5] The court's summary judgment scheduling order requires that:

The first section [of the brief opposing summary judgment] must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. 4 at 17) (emphasis in original).

accrued interest being $10,998.67, and late charges equaling $6,157.18. (Doc. 28-1 at 20). He also states that "[i]nterest continues to accrue on Loan One at the rate of $22.23 per day, and interest continues to accrue on Loan Two at the rate of $27.92 per day." (Doc. 28-1 at 6). The defendant offers no evidence to dispute these sums, and does not challenge the admissibility of these documents, or the statements made therein.

Spielberger states that he has "reviewed and approved" the legal bills from Bradley Arant Boult Cummings LLP, which he states "include the above-described collection costs." (Doc. 28-1 at 6). Jennifer Harris Henderson, a partner with the law firm of Bradley Arant Boult Cummings LLP, has submitted her affidavit in which she states that she "has firsthand knowledge of the services rendered by [the firm] on behalf of Synovus in connection with the collection of [these loans]." (Doc. 28-2 at 3). She also states that she is "familiar with the fees being charged to Synovus . . . in this matter," as well as those "charged in this area in matters such as this Lawsuit." (Doc. 28-2 at 3). Henderson's affidavit describes in detail the services the firm performed on behalf of Synovus[6] and then states that "the . . . described fees and expenses billed by [the firm] as of August 30, 2013[,] for services rendered to

---

[6] It also goes into extensive detail as to the names and qualifications of the persons who performed those services.

Synovus in connection with the Loans are described on [an attachment to her affidavit]." (Doc. 28-2 at 5). She states that these fees and expenses total $52,194.65 as of August 30, 2013. (Doc. 28-2 at 6). The attachment to which she refers sets out the invoice numbers presented to Synovus by the firm, summarizes the amounts appearing on the invoices presented to Synovus, and separates out the portion which applies only to legal services provided for collecting on these loans. That amount, as noted on the form, is $52,194.65. (Doc. 28-2 at 12). The actual invoices also appear in the record. (Doc. 28-2 at 14-89). The affidavit of J. David Dresher, who states that he is the "billing attorney for this matter," certifies that these time records are accurate, and that they were "prepared contemporaneously with the performance of the work for which the fees are claimed." (Doc. 28-2 at 91). The defendant offers no evidence to dispute these sums, and does not challenge the admissibility of these documents, or the statements made therein.

It is undisputed that the plaintiff has not foreclosed upon the security for the loans.[7]

## III.   ANALYSIS

### A.   This Case Was Not "Removed"

---

[7] The court has omitted several facts offered by both parties which are neither material nor relevant to the resolution of the motion.

The parties do not address the purported "removal" of this case by Tarrie Hyche to the United States Bankruptcy Court for the Northern District of Alabama. (Doc. 9). However, so as to avoid any confusion, the court addresses the issue now.

The notice of removal cites only 28 U.S.C. § 1446(d), which concerns the removal of an action from a state court to a district court. This section says nothing about removal from a district court to a bankruptcy court. Additionally, though the Notice of Removal does not invoke 28 U.S.C. § 1452, the court would reach the same conclusion under that provision. Section 1452 states that "[a] party may remove any claim or cause of action in a civil action [which is related to a bankruptcy case] . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452 (emphasis added). Section 1334 confers original and exclusive jurisdiction of all cases under title 11 on "the district courts." 28 U.S.C. § 1334. Similar to § 1446, §§ 1452 and 1334 say nothing about removing a claim from a district court to a bankruptcy court. Though the Eleventh Circuit has not spoken to this issue, several other district courts have held that § 1452 does not permit removal from a district court to a bankruptcy court. *See, e.g., Doyle v. Mellon Bank, N.A.*, 307 B.R. 462, 464 (E.D. Pa. 2004); *Centrust Sav. Bank v. Love*, 131 B.R. 64, 65 (S.D. Tex 1991). And, as the Bankruptcy Court for the Middle District of Florida put it:

14

"[b]ecause [this cause of action] was already pending in this district, the reported cases make plain that the debtor/defendant may not remove it to this district pursuant to the provisions of 28 U.S.C. § 1452." *In re The Acad., Inc.*, 288 B.R. 286, 290 (Bankr. M.D. Fla. 2002). The court agrees with these cases and holds that the Notice of Removal (Doc. 9) is without effect.

### B. The Plaintiff Is Entitled to Summary Judgment on the Defendant's Counterclaims

The plaintiff moves for summary judgment as to the counterclaims. (Doc. 27 at 19-26). Because the defendant has not argued these claims in her response to the motion, they have been abandoned, and summary judgment is appropriate. *See*, *Ekokotu v. Fed. Exp. Corp.*, 523 F. App'x 629, 632 (11th Cir. 2013)[8] (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)); *McIntyre v. Eckerd Corp.*, 251 F. App'x 621, 626 (11th Cir. 2007); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("When a party moves for final, not partial, summary judgment, we have stated that 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's]

---

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

favor.'").[9]

C.     **The Plaintiff Is Entitled to Summary Judgment on Its Claims in the Complaint**

1.     *The Plaintiff Does Not Have To Foreclose Before It Seeks and/or Receives a Money Judgment*

The defendant argues:

On June 23, 2013, Synovus affirmatively demanded the right to foreclose on the property mortgaged for the Notes when it filed its Motion to Stay in the Tarrie Hyche bankruptcy proceeding. Synovus demanded in its Motion that the automatic stay imposed by the bankruptcy court be lifted so Synovus could "exercise its rights against" the mortgaged property securing the Notes, including, specifically, a non-judicial foreclosure. (Synovus Foreclosure Motion at ¶1). By insisting upon its right of foreclosure, Synovus effectively made its choice with respect to Hilda [Hyche]; that being, rather than pursue monetary damages against Hilda [Hyche], Synovus chose instead to insist upon and demand its right to non-judicial foreclosure. That choice cannot be undone at this point, and Synovus is left with the sole remedy of foreclosing on the property mortgaged for the Notes unless the fair market value of those properties is less than the amount owed (it is not).

(Doc. 30 at 7-8). The defendant cites no caselaw or other support for this position. It

---

[9] The counterclaim is mentioned only once in the defendant's response, and then only in response to the plaintiff's motion for summary judgment on the plaintiff's claims. In arguing that Synovus must foreclose before filing suit, the defendant states only: "in her counterclaim against Synovus, Hilda [Hyche] alleged that Synovus breached its duty owed to Hilda [Hyche] by failing to recoup its damages through judicial foreclosure on the subject property." (Doc. 30 at 16). The court does not see this one sentence as a defense to the counterclaim itself. However, to the extent that it may be so construed, the statement makes clear that the counterclaims are based on the failure to foreclose before filing suit. Summary judgment on the counterclaims is therefore also appropriate because, as shown below, Synovus was under no duty to foreclose prior to filing suit.

is without merit. *See, Triple J Cattle, Inc. v. Chambers*, 551 So. 2d 280, 282 (Ala. 1989) ("""[a]bsent an agreement to the contrary, a secured lender may proceed on all of its remedies simultaneously or elect to pursue these remedies at different times."); *Whitney Bank v. Point Clear Dev., LLC*, CIV.A. 11-0657-WS-M, 2012 WL 2277597 at *5 (S.D. Ala. June 18, 2012) (Steele, J.) ("Alabama courts have expressly declined to impose any such mandatory duty of foreclosure in the mortgage context.").

2.  ***The Breach of Promissory Note Claims (Counts I and II)***

a.  **The Plaintiff Is Entitled to Summary Judgment on the Elements of the Claim**

A breach of promissory note claim is merely a type of breach of contract claim. *See, PNC Bank, N.A. v. S. Home Builders, LLC*, 5:13-CV-000961-KOB, 2013 WL 5524108 at *4 (N.D. Ala. Oct. 2, 2013) (Bowdre, J.); *Branch Banking & Trust Co. v. R & T Rentals, L.L.C.*, CIV.A. 10-0518-KD-N, 2012 WL 2872447 at *3 (S.D. Ala. July 12, 2012) (DuBose, J.). "In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 1120537, 2013 WL 6516387 at *6 (Ala. Dec. 13, 2013) (citations omitted). In this case, as shown in the statement of facts set out above, there is no genuine issue of material fact that all of

these elements are present.

Instead of addressing these elements, the defendant seems to be arguing that summary judgment cannot be entered against her until the fair market value of the mortgaged property is determined. (Doc. 30 at 8-13). The court, and the plaintiff, both agree that she is entitled to a <u>credit</u> for the amount for which the property may be sold at foreclosure, <u>after it is sold</u>. (Doc. 32 at 5, n. 6). However, while the defendant argues that the fair market value of the property is "a question of fact that is not proper for summary judgment" (doc. 30 at 8), she does not explain why a judgment for the amount owed on the loan cannot be entered prior to a determination as to the fair market value of the property, or its sale. As stated by the Alabama Supreme Court:

> The right of action is collateral to the debt, and as security for it. The mortgagee may pursue any course he pleases to collect the debt, whether it be a suit for a personal judgment against the debtor, or for damages against one who has wrongfully converted the mortgaged property, or otherwise destroyed his rights in it, or for a foreclosure. And he may do them all at the same time. But when he once collects his debt, by any one of those proceedings, or by a voluntary payment of it, he cannot pursue any other remedy. They are all but means to accomplish one purpose, and when that is accomplished, all the remedies, not used in so doing, are terminated.

*Sloss-Sheffield Steel & Iron Co. v. Wilkes*, 231 Ala. 511, 515-16, 165 So. 764, 767 (1936) *overruled on other grounds by Henderson v. Wade Sand & Gravel Co., Inc.*,

388 So. 2d 900 (Ala. 1980).

The defendant also seems to argue that a judgment cannot be entered because, under theories of recoupment or setoff, she must receive a credit for the value of the mortgaged property. (Doc. 30 at 13-17). This argument is also without merit. "Recoupment . . . is a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." *Finish Line v. J.F. Pate & Associates Contractors, Inc.*, 90 So. 3d 749, 754 (Ala. Civ. App. 2012) (internal citations and emphasis omitted). This defense "authorizes the recovery of any damages sustained by the defendant, which grow out of, or are connected with, the matters set forth in the plaintiff's complaint, and in breach of the contract upon which his suit is founded, or in violation of any duty imposed by the contract." *Ewing v. Shaw*, 83 Ala. 333, 335, 3 So. 692, 693 (1888). The defendant seems to argue that she is entitled to "recoupment" of the value of the property because Synovus failed to foreclose. (Doc. 30 at 16-17). However, the plaintiff breached no terms of the notes by failing to foreclose. Indeed, the notes specifically state that the plaintiff is entitled to "use any remedy [it] has under state or federal law," and can elect any remedy available to it without waiver of any other remedy. (Doc. 1-1 at 3; doc. 1-2 at 3). This lawsuit is one of its remedies under Alabama law. The defendant is not entitled to "recoup" the value of the property.

The concept of "setoff" involves "mutual debts arising from unrelated transactions." *Finish Line v. J.F. Pate & Associates Contractors, Inc.*, 90 So. 3d 749, 754 (Ala. Civ. App. 2012) (internal citations and emphasis omitted). As the mortgage and note are not "unrelated," there can be no "setoff." Further, because there is no duty to foreclose, the defendant's argument that she is entitled to a "setoff" because, in failing to foreclose, the plaintiff "has failed to act in a commercially reasonable manner in relation to the collateral," (doc. 30 at 14) is without merit.

The defendant also seems to argue that, in asking the bankruptcy court to lift the stay so that it could foreclose, the plaintiff somehow is <u>forced</u> to foreclose before filing suit. (Doc. 30 at 14-15). She cites no authority for this proposition and the court is aware of none. This argument is without merit.

The court notes that the defendant argues:

Hilda [Hyche] does not dispute that the existence of a legal duty is a question of law as cited in Plaintiff's brief citing *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). However, to the extent it is Synovus'[s] position that *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998) bars Hilda's affirmative defense that Synovus was obligated and under a duty to foreclose on the subject property before attempting to recoup the balance of the note from Hilda; Hilda disagrees. This disagreement stems from the principles the Alabama Supreme Court applies when determining the existence of a legal duty. In *Waldrup v. Allstate Insurance Co.*, 2011 WL 2039584 (S.D. Ala. May 9, 2011), the District Court explained these principles as follows: "[T]he Supreme Court in Owen, before reaching the determination that plaintiff had not produced "sufficient evidence to

support a finding of 'special circumstances' justifying imposition of a duty to disclose[,]" discussed a litany of factors developed through discovery. *Compare id.* at 843 with *id.* at 842–843 ("In evaluating the question whether State Farm had a duty to speak, we must consider a number of factors: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.").

Here, in her counterclaim against Synovus, Hilda alleged that Synovus breached its duty owed to Hilda by failing to recoup its damages through judicial foreclosure on the subject property. In addition to the note itself, Synovus cannot simply ignore the factors discussed in *Owen* that created Synovus'[s] duty to obtain an appraisal and foreclose on the property. Synovus'[s] duty meets all six facts to create a duty discussed in *Owen* and, thus, is obligated to foreclose on the mortgaged property and credit the value of that property against any debt owed, which, in this case, means no amounts are ultimately owed by Hilda.

(Doc. 30 at 15-16). This argument is difficult to follow. To the extent that the defendant is arguing that her "defense" of failure to disclose is not barred, the court assumes that she is correct. To the extent that she is arguing that the *Owen* case somehow creates a duty on the part of the plaintiff to foreclose, she is not correct. The court can discern no other point that these paragraphs attempt to make.

### b.    The Plaintiff Is Entitled to Summary Judgment as to the Amount of Damages through September 17, 2013

There is no genuine issue of material fact that, as of September 17, 2013, the amount of damages, was $447,671.79 which is comprised of:

| | | |
|---|---|---|
| Loan One | $160,060.09 | principal |
| | $12,399.64 | accrued interest |
| | $4,870.50 | late fees |
| | | |
| Loan Two | $200,991.06 | principal |
| | $10,998.67 | accrued interest |
| | $6,157.18 | late fees |
| | | |
| Collection Costs: | $52,194.65 | attorneys' fees and expenses |

### c.    A Fact Question Remains as to the Total Amount of Damages

A fact question remains as to the total amount of damages from September 18, 2013, through the date of trial.

### 3.    *The Unjust Enrichment Claim (Count IV)*

The plaintiff agrees that "[i]f the Court determines that summary judgment is appropriate on Counts I and II of the Complaint, then dismissal of Synovus'[s] Count[] IV . . . is also warranted, as [that] Count[] present[s] [a] claim[] for unjust enrichment which [is] pled in the alternative to Counts I and II." (Doc. 27 at 15, n. 3). Accordingly, summary judgment will be denied as to Count IV, and that claim will be dismissed with prejudice.

## IV.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1.   As to Counts I and II (breach of promissory note), the court expressly determines that there is no genuine issue of material fact that there were two contracts, that the plaintiff performed under the contracts, that the defendant did not perform, and that the plaintiff was damaged because of the defendant's non-performance. The plaintiff's motion for summary judgment is **GRANTED** on those issues.

2.   As to Counts I and II, the court also expressly determines that there is no genuine issue of material fact that, as of September 17, 2013, the plaintiff had incurred damages in the amount of $447,671.79. Summary judgment is hereby **GRANTED** on that issue.

3.   There remains a genuine issue of material fact as to the exact amount of damages after September 17, 2013, through the date of judgment. The plaintiff's motion is **DENIED** as to those issues, and the case will proceed to trial on those issues alone.

4.   Summary judgment is **GRANTED** in favor of the plaintiff and against the defendant as to all counterclaims. All counterclaims are hereby **DISMISSED with prejudice**.

5.   Summary judgment is **DENIED** as to Count IV (unjust enrichment), and that claim is **DISMISSED with prejudice**.

6.      An order will follow setting this case for a final pre-trial conference.

**DONE** and **ORDERED** this 9th day of July, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge